UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ANTHONY RAMIREZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 22-cv-00859-YGR   (RMI)<br><br>**ORDER RE: DISCOVERY DUSPUTES**<br><br>Re: Dkt. No. 77 |

Currently pending before the court is a jointly-filed discovery dispute letter brief through which Plaintiffs seek to compel the production of a variety of documents and information. *See* Ltr. Br. (dkt. 77) at 1-2. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons stated below, Plaintiff's requests are denied.

**BACKGROUND**

In this putative class action case, Plaintiffs (three individuals, on behalf of themselves and other similarly situated) allege that in the Spring of 2020, at the outset of the COVID-19 pandemic, Defendant (Bank of America, hereafter, the "Bank") "promised a pandemic-long relief program from overdraft and insufficient fund fees," but that the Bank "never implemented the program it promised . . . [and] terminated the limited changes it did implement in August 2020 without notice," notwithstanding the fact that after August of 2020, the Bank "continued to falsely claim a pandemic relief program existed . . ." *See* Second Amend. Compl. ("SAC") (dkt. 72) at 2. Plaintiffs also state that the pandemic continued on for another two years after the Bank terminated the limited relief it had offered until August of 2020, while the Bank allegedly

1     continued to promote the additional relief measures that it had allegedly ceased providing. *See id*.
2     at 20-26.
3           Plaintiff Ramirez was assessed a total of $245 in overdraft and insufficient funds fees.[1] *Id*.
4     at 32. Plaintiff Aldana was also assessed $245 in fees. *Id*. at 36. Plaintiff Hobson was assessed
5     $555 in fees in 2020 ($175 of which were refunded), and $245 in fees in in 2021 (of which $35
6     were refunded). *Id*. at 38. Each of these Plaintiffs alleges that they were mislead by the Bank's
7     public statements regarding pandemic-related financial hardship programs. *See id*. at 32-40. On
8     this basis, Plaintiffs' claim: unjust enrichment; unfair competition under California law; and,
9     unfair trade practices under New Jersey law. *See id*. at 44-49. Plaintiffs seek to certify a
10    nationwide class of checking account-holders assessed overdraft and insufficient funds fees by the
11    Bank (between September of 2020, and June of 2022), after the Bank promised to consider
12    waiving such fees due to the pandemic, and who unsuccessfully attempted to secure such refunds;
13    as well as California and New Jersey sub-classes defined with the same parameters. *See id*. at 41-
14    44. In their prayer for relief, Plaintiffs seek, *inter alia*, an injunction requiring the Bank to disclose
15    that it terminated its overdraft and insufficient funds relief on or about August 31, 2020. *Id*. at 49.

## DISCUSSION

17          In addition to establishing that its request satisfies relevancy requirements, a party moving
18    to compel discovery must also "detail the basis for the party's contention that it is entitled to the
19    requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P.
20    26(b)(2) are satisfied." *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 280-81 (N.D.
21    Cal. 2018). Additionally, "[i]n a motion to compel, the moving party bears the burden of showing
22    why the other party's responses are inadequate or their objections unjustified." *See AngioScore,*
23    *Inc. v. TriReme Med., Inc.*, Case No. 12-cv-03393-YGR (JSC), 2014 U.S. Dist. LEXIS 173700, *8
24    (N.D. Cal. Dec. 16, 2014) (citing *Williams v. Cate*, No. 09-0468, 2011 U.S. Dist. LEXIS 143862,
25    2011 WL 6217378 at *1 (E.D. Cal. Dec.14, 2011) (the moving party "bears the burden of
26    informing the Court . . . for each disputed response, why Defendant's objection is not justified . . .

---

[1] All references herein to "fees," are references to the two types of fees at issue in this case: overdraft fees, and insufficient funds fees. For convenience, the court will generally use the term, "fees."

1  Plaintiff may not simply assert that he has served discovery responses, that he is dissatisfied, and
2  that he wants an order compelling further responses."). Here, Plaintiffs' requests <u>all</u> fall short of
3  satisfying these standards.

4  **(1) Search Terms and Custodians**

5        First, Plaintiffs relate their general dissatisfaction with the fact that they have endured a
6  reportedly long history of proposing search terms to the Bank, which the Bank has reportedly
7  rejected (*see* Ltr. Br. (dkt. 77) at1). Rather than describing their justification for *why* the Bank
8  should be compelled to use Plaintiffs' proposed search terms, Plaintiffs simply "request that the
9  Court order [the Bank] to utilize the final set of search terms proposed by Plaintiffs, which are
10 attached to this letter as Plaintiffs' Exhibit B." *Id*.  As to the identification of custodians, in
11 similarly conclusory fashion, Plaintiffs complain that the Bank has not identified a single
12 custodian, "and with narrow exceptions, has refused to inform Plaintiffs where it has searched for
13 documents." *Id*. at 1. In light of which, Plaintiffs ask the court to order the Bank "to identify the
14 full set of individuals appearing on its Litigation Hold, with relevant job titles by time period for
15 October 1, 2019 to June 30, 2022, and to show cause why the individuals appearing on the
16 Litigation Hold should not be used as custodians . . . [and] to identify all non-custodian sources
17 where responsive documents may exist, including but not limited to the non-custodian sources it
18 has searched for documents to date." *Id*.

19       For its part, the Bank explains that it "has always been willing to negotiate search
20 protocols (including custodians and search terms) on a request-by-request basis." *Id*. at 3. The
21 Bank submits that, as early as July of 2023, it "explained to Plaintiffs that custodians and search
22 terms should be negotiated within the context of specific requests, since this sort of discovery is
23 not a 'one-size-fits-all' proposition." *Id*. The Bank adds that Plaintiffs delayed the proposing of
24 search terms tailored to specific RFPs for months, and that "even now, Plaintiffs have not yet
25 explained how any of the requests at issue require a custodial search." *Id*. The Bank then goes on
26 to offer a detailed explanation of the manner in which it keeps its records and the way in which
27 these records may be identified and located – as well as a detailed explanation as to why Plaintiffs'
28 "reflexive demand" that the Bank conduct custodial searches is unjustified. *See id*. According to

the Bank, Plaintiffs have requested that the Bank use custodial search strings to locate customer complaints, while the Bank states that it has already agreed to search its centralized repository of customer complaints; to provide a general description of the Bank's search protocol after it consults with the knowledgeable personnel; and, that the Bank has already explained that the repository cannot deploy the Boolean search strings that Plaintiffs proposed. *Id*.

While the Bank's portion of the letter brief is responsive to Plaintiffs' requests, Plaintiffs' portion of the letter brief appears to completely ignore the Bank's responses, and simply sets forth its demand that its proposed search terms be adopted (without any argument as to *why*), and that a series of pronouncements be ordered as to custodians (again, without any responsive arguments as to *why*). Plaintiffs' requests as to search terms and custodians are **DENIED** because Plaintiffs have failed to "show[] why the other party's responses are inadequate or their objections unjustified." *See AngioScore*, Case No. 12-cv-03393-YGR (JSC), 2014 U.S. Dist. LEXIS 173700, *8. Instead, Plaintiffs' portion of the letter brief has essentially "simply assert[ed] that [they have] served discovery responses, that [they are] dissatisfied, and that [they] want[] an order compelling further responses." *See Williams*, 2011 U.S. Dist. LEXIS 143862, 2011 WL 6217378 at *1.

**(2) Requests for Production ("RFP") and Interrogatories ("ROG")**

Plaintiffs seek to compel the production of the Bank's internal communications (RFP Nos. 1, 14, 15, and 24). Plaintiffs describe these internal communications as relating to the Bank's response to the COVID-19 pandemic (RFP No. 1); consumer questions, complaints, or grievances regarding the promised additional COVID-related overdraft and non-sufficient funds fee relief (RFP No. 14); changes, adjustments, reductions, reversals, or write-offs to the at-issue fees and related policies (RFP No. 15); and, research about the impact of fees on customers during COVID (RFP No. 24). *See* Ltr. Br. (dkt. 77) at 2. Once again, Plaintiffs merely demand these documents, they do not venture to carry their burden by way of argument as to how they are relevant to a claim or defense, or whether they are proportional to the needs of the case.

The Bank responds to the effect that it has already produced or agreed to produce: documents sufficient to show how its fee refund policy changed in response to the pandemic; unique policies related to its Client Assistance Program as it was deployed in response to the

4

pandemic concerning reversals of fees; customer complaints concerning requests for fee refunds as a result of the pandemic; and, lastly, the Bank submits that it has already confirmed that documents responsive to RFP 24 do not exist. *See id*. at 3. Otherwise, the Bank submits that its "*internal* communications regarding the documents sought in these RFPs are not relevant to the issues in this case, including whether the Bank's *public* communications were misleading to a reasonable consumer, or whether Plaintiffs saw and relied on those communications." *Id*. The Bank adds that a search for responsive (though irrelevant) documents along these lines would impose a burden on the Bank that is disproportionate to the needs of the case. *Id*.

Once again, the Bank's portion of the letter brief is responsive to Plaintiffs' requests, but Plaintiffs' portion of the letter brief simply ignores the Bank's responses. Plaintiffs do nothing more than to set forth a series of demands for documents – the relevance of which is neither supported by argument, nor is facially apparent. Further, the court concludes that, even if documents responsive to RFP Nos. 1, 14, and 15 were marginally relevant to a claim or defense (something which is difficult for the court to imagine), the court is nevertheless convinced that the burden imposed on the Bank in ferreting it out and producing it would far outweigh any potential benefit to Plaintiffs. As for RFP No. 24, the court is puzzled as to why Plaintiffs would even include RFP No. 24 in their requests to compel, given that the Bank "has already confirmed that documents responsive to RFP 24 do not exist." It should be noted at this point that the indifference with which Plaintiffs' portion of this letter brief has been drafted is striking and is manifest in their ignoring the Bank's arguments, in their failure to present arguments to meet the burdens associated with moving to compel the discovery sought, and in their apparent refusal to even acknowledge, let alone address, the fact that the Bank had confirmed – months ago – that documents responsive to RFP No. 24 *do not exist*. For these reasons, and because Plaintiffs have failed to show why the other party's responses are inadequate or their objections unjustified, Plaintiffs' requests to compel documents responsive to RFP Nos. 1, 14, 15, and 24 are **DENIED**.

Plaintiffs also seek the compelled production of information and documents about "proposed policies" (RFP Nos. 1 and 15 and ROG Nos. 2, 3, and 5) related to fees that the Bank considered but did not implement. *See* Ltr. Br. (dkt. 77) at 2. Here, Plaintiffs' have ventured to

state an explanation – short and conclusory as it may be – for *why* they believe they should have this information. Plaintiffs claim that policies that the Bank considered but did not implement "will not only clarify [its] reasons behind the plans it did ultimately adopt, but also the particularities of those policies . . . [and] that [c]ourses of action that [it] rejected will make clear what, in fact, [it] sought out to do." *Id*. By way of response, the Bank submits that it "has already produced documents showing the changes it made to its policies and procedures to implement additional pandemic-related [] fee relief," and that "[i]t has further agreed to search its policy repository to identify unique policies related to [Client Assistance Program] as deployed in response to the pandemic concerning reversals to any [] fees." *Id*. at 4. The Bank adds that searching for and producing "[i]nternal communications, especially about policies [that may have been] considered but not implemented, are not relevant to whether the Bank's *public* statements were misleading or whether any Plaintiffs relied on those statements, and searching for and producing this information would be disproportionate to the needs of the case." *Id*. (emphasis added). The undersigned agrees. Therefore, Plaintiffs' request to compel any further responses along these lines is **DENIED**.

Plaintiffs also seek to compel a broad swath of documents concerning the Bank's "other COVID-19 policies, practices, and/or procedures" (RFP Nos. 1, 6, and 22). Plaintiffs describe these as "documents related to pandemic duration that do not specifically discuss its COVID-related Fee relief program." *Id*. at 2. Plaintiffs venture to justify these broad requests by only stating that "the issue of the duration of the pandemic lies at the heart of this case, and [Bank] documents regarding its position on that issue are highly relevant regardless of whether they are specifically tethered to the Fee program." *Id*. The court is puzzled by Plaintiffs' relevance argument. If Plaintiffs believe that the Bank's understanding of "the duration of the pandemic lies at the heart of the case," this information could easily be garnered through a narrowly-tailored interrogatory that would ask the Bank to identify a range of time between a pair of dates.

In any event, by way of response, the Bank submits that it "has already produced documents sufficient to show how its [] fee refund policy changed in response to the pandemic, as well as exemplar copies of advertisements and other marketing materials it made available to the

6

1   public and to deposit customers regarding additional pandemic-related [] fee relief." *Id*. at 4. As
2   for "documents related to pandemic duration that do not specifically discuss [the Bank's] COVID-
3   related Fee relief program," the Bank submits that these documents would "encompass materials
4   that are entirely irrelevant to this case – including documents related to products not at issue in this
5   litigation (e.g., credit cards, mortgages, investment products), and entirely irrelevant programs
6   (e.g., the paycheck protection program, increased sanitization procedures for branches) . . . as well
7   as documents concerning myriad differing local public health regulations." *Id*. Consequently, the
8   Bank contends that "[t]hese requests are vastly disproportionate to the needs of the case, which
9   concerns the Bank's *public* statements about additional [] fee relief." *Id*. (emphasis added). The
10  court agrees; therefore, Plaintiffs' request to compel any further responses to RFP Nos. 1, 6, and
11  22 is **DENIED**.

12  **Relevant Time Period**

13  Plaintiffs complain that the Bank "has generally agreed to use the period of October 1,
14  2019[,] to June 30, 2022 ("Discovery Period"), but has stated that for certain responses, it will use
15  a significantly narrower period." *Id*. at 2. Plaintiffs then add that the Bank "has refused to identify
16  the Requests for which it has (or intends) to use a shorter range . . . [but that it] should be ordered
17  to provide Plaintiffs with a list of Requests for which it uses a time frame other than the Discovery
18  Period and the time frame it has used or intends to use. *Id*.  The Bank responds to the effect that it
19  has not refused to identify the RFPs for which it intends to use a narrower date range; instead, the
20  Bank suggests that it has agreed to Plaintiffs' proposal along with a reservation of rights to the
21  effect that "it would not undertake facially unreasonable searches across the entire time period
22  (e.g. searching for October 2019 [pre-pandemic] documentation related to procedure changes in
23  response to the pandemic, when none would have existed at that time)." *Id*. at 4. The Bank states
24  that it also "agreed to discuss the issue further after it completes supplementing its discovery
25  responses to account for the change in Plaintiffs' theory of the case in their Second Amended
26  Complaint . . . [and that] [t]here is no ripe dispute for the Court to resolve here. *Id*. The court
27  agrees, the portion of Plaintiffs' letter brief (Section 3: "Additional Disputes" – "Relevant Time
28  Period") does not set forth any justiciable discovery dispute. Hence, Plaintiffs' request to order the

7

Bank "to provide Plaintiffs with a list of Requests for which it uses a time frame other than the Discovery Period and the time frame it has used or intends to use," is **DENIED**.

**ROG No. 7**

Lastly, Plaintiffs explain that ROG No. 7 "seeks financial data about [the Bank's] Fee assessments and consumer banking business." *Id*. at 2. While Plaintiffs report that the Bank has only agreed to "produce data about Fees that were subject to refund requests, but not Fee assessments generally, service fees, or consumer banking revenue," Plaintiffs suggest that this broader scope of fee information "all goes to the importance of Fees to [the Bank's] business, which may illuminate its decision to terminate the pandemic-long Fee relief that it repeatedly promised its customers." *Id*.

The Bank responds that it has already agreed to provide Plaintiffs with "anonymized transaction-level information sufficient to show each request for a hardship or relationship refund of [insufficient funds] or [overdraft] fees for nationwide deposit customers for October 1, 2019[,] through June 30, 2022." *Id*. at 4. The Bank adds that "[d]ata regarding fees not subject to a refund request, total service fees, and consumer banking revenue are not relevant to Plaintiffs' contention that the Bank was obligated to grant more [insufficient funds] and [overdraft] refund requests than it did, and searching for and producing this information would be disproportionate to the needs of the case." *Id*. The court agrees; therefore, Plaintiffs' request to compel any further responses to ROG No. 7 is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 1, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge

8