Cort T. Carlson (CA Bar No. 348126)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
*ccarlson@tzlegal.com*

Hassan A. Zavareei (CA Bar No. 181547)
Andrea R. Gold (*pro hac vice*)
Glenn E. Chappell (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue Northwest, Suite 1010
Washington, DC 20006
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*gchappell@tzlegal.com*

*Counsel for Plaintiffs and the Proposed Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY RAMIREZ, MYNOR VILLATORO ALDANA, and JANET HOBSON, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　　　　Defendant. | Case No. 4:22-cv-00859-YGR<br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: July 15, 2025<br>Time: 2:00 pm<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

**INTRODUCTION**

In its supplemental response (D.E. 128, "Resp."), Bank of America, N.A. ("BofA") proclaims that Plaintiffs are asking the Court to certify the same classes they previously proposed. That is false. The revised definitions explicitly limit class members to those who requested a refund of NSF/OD fees based on pandemic hardship, and they are explicitly tied to the evidence in the record, which shows that BofA classified such requests using either the Relationship or Hardship refund request reason code in its records. These new definitions deliver exactly what the Court required in its July 15, 2025 order instructing Plaintiffs to submit class definitions that include only "those potentially harmed" and "provide[] explicit ties to the record evidence." D.E. 122.

BofA attacks the new class definitions by largely rehashing arguments that Plaintiffs already addressed in prior briefing and at the hearing. The limited new arguments it raises are unpersuasive and do nothing to defeat Plaintiffs' showing that this case is well-suited for class treatment.

**ARGUMENT**

**I.    The classes should include refund requests with the Relationship reason code.**

BofA again fails to rebut the evidence that it treated Hardship and Relationship requests interchangeably. Plaintiffs previously compiled all the evidence demonstrating this. *See* D.E. 105-1 (Plaintiffs' Reply in Support of Class Certification, or "Class Cert. Reply") at 22-24.

BofA addresses some of this evidence in its response, but its arguments fall short. For example, Plaintiffs showed that BofA tagged hundreds of thousands Relationship requests that it granted with a refund decision sub-reason of "Loss of Income, Death, Medical, Client Assistance." *Id.*; D.E. 127 (Plaintiffs' Supplemental Memorandum, or "Supplemental Memo") at 3. This evidence shows that customers made these requests based on economic hardship and directly contradicts the assertion of BofA and its corporate representative that all such requests were coded with a refund request reason of Hardship. *E.g.*, Resp. at 4. But because BofA only recorded the sub-reason when it granted the request, there is no similar evidence when the bank denied the requests. BofA's response is to call for more "evidence" to "explain why" this supports Plaintiffs' position on use of the Relationship code. *Id.* at 5. But no further evidence is needed and the explanation is simple. Because the bank coded requests that were granted based on hardship as

1

**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
*Ramirez, et al. v. Bank of America, N.A.*, Case No. 4:22-cv-00859-YGR

1  Relationship, it follows that BofA denied such requests made on the same grounds—it just didn't
2  keep records of that in its system. Any lack of "better" evidence is the Bank's fault because, as it
3  admits, it failed to keep more detailed records of its customers' requests. *See* Dkt. 103-1 (BofA's
4  opposition to class certification motion) at 30-31; Class Cert. Reply at 19-20.

5  Next, Plaintiffs showed that the increase in the grant rate for Relationship requests during
6  the pandemic tracked the increase in the grant rate for Hardship requests. Supplemental Memo at
7  3-4. From this evidence, the Court can infer that the increases were a result of the pandemic. BofA
8  calls this "speculation." Resp. 5. Common-sense reasoning, however, is not speculation. "In
9  deciding whether Rule 23's requirements for certification have been met, a district court may draw
10 reasonable inferences from the facts before it." *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332
11 F.R.D. 556, 563 (M.D. Tenn.); *see also Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020
12 WL 5653153, at *2 (N.D. Cal. Sept. 23, 2020) (in granting class certification, court made "common-
13 sense assumptions and reasonable inferences that residential real estate is sold by individuals, not
14 businesses"). Plaintiffs are asking the Court to do just that: it is reasonable to conclude from this
15 strong correlation in the grant rates for both categories that BofA treated many incoming economic
16 hardship requests resulting from a nationwide economic shutdown as "Relationship." BofA
17 identifies no other change in policies that would lead to this increase, followed by an instantaneous
18 decrease in the grant rate when BofA discontinued its additional pandemic hardship relief.

19 The Bank's arguments on Plaintiffs' experiences offer nothing new, either. *See* Resp. 5. In
20 the reply brief, Plaintiffs painstakingly walked through the call recordings of Mr. Aldana's refund
21 requests, *see* Class Cert. Reply at 24-25, so we will not do that again here. But to summarize a point
22 that BofA simply cannot rebut: Mr. Aldana *never* mentioned his relationship with the Bank in either
23 of those calls, nor did the BofA representatives he spoke with. *See id.* at 25. Instead, what he
24 indisputably *did* mention was the Bank's fraudulent pandemic hardship program (which the BofA
25 representative claimed didn't exist). *See id.* at 24-25. Yet, his request was coded as Relationship.
26 This is not mere speculation or inference, it is direct evidence that the Relationship code was used
27 when the pandemic was explicitly communicated by consumers (not any bank relationship).
28

BofA claims that the only reason to include Relationship refund requests is to increase damages. Resp. 5. That is false and just shows the Bank's insouciance toward the impact of its fee policies on its customers. Plaintiffs seek to include requests coded as Relationship in the proposed classes because it is unfair to exclude pandemic hardship requests when the evidence shows, in myriad ways, that BofA's representatives used that category for COVID-19 fee refund requests. Despite promising individualized help tailored to meet its customers' specific needs, BofA implemented a vague one-size-fits-all solution that disregarded individual circumstances, lumped many of their refund requests into two reason categories, kept poor documentation of their requests, and now seeks to hide behind its own rote, anti-individual treatment of them. That is a far cry from being "here to help." D.E. 96-3 (Plaintiffs' Memorandum in Support of Class Certification, or "Class Cert. Memo") at 4, 16.

## II. The Hardship request reason code is an appropriate marker for identifying those harmed by BofA's misrepresentations and omissions.

BofA's arguments on requests coded as Hardship evince a fundamental misunderstanding of the requirements for class certification. Rule 23 does not require Plaintiffs to define the class to exclude every person who might potentially have made a request based on some hardship other than related to the pandemic. That would be impossible because the bank merged all hardship requests into one category when it could have made a more specific category to track pandemic hardship requests, such as "Covid Hardship." *See* D.E. 118 at 7; Class Cert. Reply at 19-20.

Instead, Plaintiffs must demonstrate that the common questions in the case will drive its resolution and predominate over individual issues. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc) (a class may include some uninjured persons as long as "the common question predominates over any individual questions"). Plaintiffs have done so. Aside from the above-discussed inclusion of many COVID-19-based requests in the Relationship category, refund requests based on pandemic hardship were coded as Hardship. Accordingly, Plaintiffs' use of the Hardship request reason as a marker for identifying class members who were harmed by the Bank's misrepresentations is appropriate because it tracks the record evidence and ensures that the class definitions are "reasonably co-extensive with Plaintiffs'

chosen theory of liability." *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 819 (N.D. Cal. 2021) (Gonzalez Rogers, J.); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016). Reasonably co-extensive, not exacting or perfect, is the test. Plaintiffs' definition satisfies that test.

To defeat class certification, BofA must show that individual issues would overwhelm the common ones Plaintiffs identified. That is especially true here because, as discussed in the next section, all class members were exposed to the Bank's promise. BofA's argument on this point is another way of saying that something other than the Bank's false promise and secret cancellation of its program caused class members' harms, but this common exposure triggers the UCL's presumption of reliance and the CFA's presumption of causation. Accordingly, the burden to rebut falls on BofA, and it must show that it can rebut these presumptions and that doing so would cause individualized issues to overwhelm the common issues.

It has not done so. For example, although BofA is the keeper of its business records, over what is now three rounds of class certification briefing and oral argument, it has never come forward with any sampling of call recordings or other evidence indicating that a significant portion of those who called and requested NSF/OD fee refunds in response to BofA's massive marketing campaign encouraging them to do just that did so because of reasons entirely divorced from the pandemic. Thus, despite BofA's argument, it is BofA that has the "speculation" problem under the applicable precedent. *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 729 (9th Cir. 2012).

BofA's pandemic-hardship-versus-non-pandemic-hardship premise is flawed as well. COVID-19 infected the country's economy writ large and produced cascading effects that touched almost everyone in the workforce. For example, in a February 2021 survey, "[n]early all (95%) full-time employees reported that they have financial stress," and "44% of full-time employees" in all income brackets "said their financial situation was much/somewhat worse in February 2021 than prior to the COVID-19 pandemic."[1] In a September 2020 study, 84% of Americans reported that some aspect of their personal finances was causing them stress in light of the pandemic, and 68%

---

[1] Purchasing Power, *The State of Employee Finances: 2021 The Effect of COVID-19, Financial Stress and What the Future Holds* 5, 11 (Sept. 2021), https://images.purchasingpower.com/merch/b2b-pdfs/2021-PPC-Whitepaper-The-State-of-Employee-Finances.pdf.

were "at least somewhat concerned about their personal financial situation considering the COVID-19 outbreak."[2] In those circumstances, it is reasonable to conclude that customers who made economic hardship requests for refunds of OD and NSF fees were suffering from the massive economic collapse caused by the pandemic.

Further, these surveys measured the sentiments of employees in all income brackets. But as Plaintiffs explained previously, the class here includes those targeted by the Bank's promise of additional pandemic hardship relief and accepted BofA's invitation to call and seek refunds of OD/NSF fees. *See* Class Cert. Reply at 6, 9-10. That group consisted of those struggling to stay ahead financially and thus were the most vulnerable to the pandemic's economic effects. *Id.* Among this group, there is no evidence in the record (let alone enough to rebut the presumptions in Plaintiffs' favor) that economic hardship entirely unrelated to the pandemic drove more than a *de minimis* number of fee refund requests.

BofA observes that customers made approximately 140,000 Hardship requests per month in the months before the pandemic. Resp. at 6. But as the analysis above shows, the pandemic both created new hardship and exacerbated preexisting economic hardship. Thus, those pre-pandemic requests do not support the claim that substantial numbers of requests made during the pandemic were entirely unconnected to the pandemic's economic impacts.

Plaintiffs' damages model is as specific as the evidence allows, contrary evidence may be presented at or after trial, and "the need for individualized findings as to the amount of damages does not defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Indeed, the Court could bifurcate the damages phase after the liability phase. That does not need to be resolved now, when Plaintiffs have put forth a damages model/class definition that is "consistent with [the plaintiff's] liability case." *Comcast v. Behrend*, 569 U.S. 27, 35 (2013).

---

[2] National Endowment for Financial Education (NEFE), *Survey Update to COVID Related Financial Stress* (Summary Survey) (Sept. 24, 2020), https://www.nefe.org/research/polls/2020/covid-19-survey-update.aspx.

5
**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
*Ramirez, et al. v. Bank of America, N.A.*, Case No. 4:22-cv-00859-YGR

1  **III.  All members of the proposed classes were exposed to the Bank's lies.**

2  BofA's argument in Section I.C. is difficult to decipher because it conflates exposure, reliance, and *Comcast*'s requirement that a plaintiff's damages model be consistent with their theory of liability. Regardless, BofA's position is wrong because there was classwide exposure here.

Plaintiffs are not required to "identify which class members actually saw the Bank's advertisements." Resp. 8. Plaintiffs have shown that all proposed class members were *exposed* to BofA's lies—and proving exposure to a misrepresentation is not the same thing as proving that every person read it and individually relied on it. *See* Class Cert. Reply at 3-6. When there is common exposure of the type shown here, the UCL requires *BofA* to rebut the presumption of reliance. *See* Class Cert. Memo at 12-13. The CFA similarly presumes causation in such circumstances. *See id.* Given these presumptions, the class definitions proposed by Plaintiffs here are appropriate in scope because they only include people exposed to the Bank's statements and omissions and then took the Bank up on its offer by calling and requesting refunds. For that same reason, BofA's attempt to distinguish *In re PFA* and *Ruiz Torres* is unsuccessful. Both cases involved classes in which the exposure was classwide. *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 816 (N.D. Cal. 2021); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016). The same is true here.

BofA also claims that Plaintiffs' argument that all class members were harmed is inconsistent with their theory of liability, Resp. 10, but it is perfectly consistent. As Dr. Levy explained, the governing legal standard determines liability, but if liability is established, Plaintiffs can show that all members of the proposed classes were harmed due to the Bank's conduct. *See* D.E. 105-11 (Levy Rebuttal Rep.) ¶¶ 9-16. Here, the relevant legal standard is the UCL's presumption of reliance and the CFA's presumption of causation. Because those elements are presumed once classwide exposure is shown, the only remaining question is whether the Bank's conduct caused every class member economic harm. Dr. Levy demonstrates that it did by explaining that every member of the proposed classes would have received additional relief if BofA had fulfilled its promise to offer pandemic hardship relief while the pandemic was ongoing. *See id.*

1  **IV.  June 30, 2022 is an appropriate cutoff date for the class period.**

2  BofA's arguments on the class period cutoff go to the merits of Plaintiffs' claims, not the propriety of certifying the proposed classes. Liability will be determined with a simple yes-or-no decision on Plaintiffs' contention that a reasonable consumer would have interpreted the Bank's promises to last for the duration of the pandemic. *See* Class Cert Reply at 14.

BofA is wrong on the merits too. For instance, BofA hid the truth concerning the nature and end of its additional pandemic hardship relief from its customers, so at most, this would have led to confusion, not full knowledge of the truth. *See id.* at 15, 17. And BofA's arguments on the reasonableness of believing that relief was still available in 2022 ignore the economic realities of the time: California's Public Health State of Emergency ended on February 28, 2023—eight months after the class period cutoff that Plaintiffs proposed—and New Jersey's state of emergency ended on March 7, 2022, just a few months before the proposed cutoff.[3] In September 2022 (three months after the proposed cutoff), New Jersey's unemployment rate and number of employed residents had still not recovered to pre-pandemic levels.[4]

BofA would complain regardless of the cutoff date Plaintiffs chose, but the proposed June 30, 2022 end date is a reasonable cutoff that tracks the end of BofA's pandemic-response measures and is consistent with the end of emergency measures in many states—including California and New Jersey. BofA may contest Plaintiffs' reasonable understanding of the duration of its promise to provide additional pandemic hardship relief at trial—a promise that remained widely accessible throughout the class period and beyond—but it has shown no basis for refusing to certify the proposed classes based on the chosen cutoff.

**CONCLUSION**

The Court should certify the proposed classes.

---

[3] *See States' COVID-19 Public Health Emergency Declarations*, Nat'l Academy for State Health Pol'y (updated June 13, 2023), https://nashp.org/states-covid-19-public-health-emergency-declarations/.

[4] *See* Charles Steindel, *Garden State Initiative, GSI Analysis: September '22 Jobs Report – New Jersey Job Numbers Soft Despite Plunge in Unemployment Rate* (Oct. 20, 2022), https://www.gardenstateinitiative.org/reports/gsi-analysis-september-22-jobs-report-new-jersey-job-numbers-soft-despite-plunge-in-unemployment-rate/.

7

**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
*Ramirez, et al. v. Bank of America, N.A.*, **Case No. 4:22-cv-00859-YGR**

| | | |
|---|---|---|
| 1 | Dated: August 27, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | Cort T. Carlson (CA Bar No. 348126) | /s/ *Andrea R. Gold* |
| | **TYCKO & ZAVAREEI LLP** | Andrea R. Gold (*pro hac vice*) |
| 4 | 1970 Broadway, Suite 1070 | Hassan A. Zavareei (CA Bar No. 181547) |
| | Oakland, CA 94612 | Glenn E. Chappell (*pro hac vice*) |
| 5 | (510) 254-6808 | **TYCKO & ZAVAREEI LLP** |
| | ccarlson@tzlegal.com | 2000 Pennsylvania Ave NW Suite 1010 |
| 6 | | Washington, DC 20006 |
| 7 | | (202) 973-0900 |
| | | hzavareei@tzlegal.com |
| 8 | | agold@tzlegal.com |
| | | gchappell@tzlegal.com |
| 9 | | |
| | | *Attorneys for Plaintiffs and the Proposed Classes* |

8
**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
*Ramirez, et al. v. Bank of America, N.A.*, **Case No. 4:22-cv-00859-YGR**